**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| MIRA SAFETY LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 1:24-CV-01363-DII |
| | § | |
| BTG INTERNATIONAL, INC., | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendant*. | § | |
| | § | |

**MIRA'S FIRST AMENDED COMPLAINT**

Plaintiff MIRA Safety LLC ("MIRA") hereby asserts the following claims against Defendant BTG International, Inc. ("BTG").

**SUMMARY OF DISPUTE**

MIRA is a Texas company that sells emergency preparedness products, including gas masks, respirators, hazmat suits, and potassium iodide products for preventing illness related to radiation exposure. BTG manufactures and distributes such potassium iodide products under the brand name "Thyrosafe."

Starting in 2022, MIRA purchased over $3.5 million in Thyrosafe-branded products from BTG for the express purpose of reselling those products on Amazon's e-commerce platform and to distributors located in Canada. BTG encouraged and facilitated those efforts and represented that MIRA would be the exclusive vendor for selling Thyrosafe-branded products on Amazon. The parties' relationship soured, however, when MIRA began manufacturing its own potassium iodide products.

MIRA subsequently learned that it could not sell Thyrosafe-branded products on Amazon unless those products were accompanied by a brand transparency label required by BTG. BTG refused to provide such labels and instead informed MIRA that BTG had designated a different third party as its exclusive vendor on Amazon. By refusing to provide the labels, BTG has

effectively blocked MIRA from selling Thyrosafe-branded products on Amazon—even though BTG knowingly sold those products to MIRA for that express purpose. To make matters worse, BTG also informed MIRA that Thyrosafe-branded products were not authorized for sale in Canada. That came as a surprise to MIRA, because BTG had consistently facilitated and encouraged MIRA to sell to distributors in Canada over the course of the parties' relationship.

MIRA now brings the following claims against BTG for breach of contract, breaches of express and implied warranties, tortious interference, and fraud.

## PARTIES

1. MIRA is a Texas limited liability company with its principal place of business in Travis County, Texas. MIRA may be contacted through undersigned counsel.

2. BTG is a Delaware corporation with its principal place of business in Pennsylvania but has employees operating in Texas. It may be served at 300 Four Falls Corporate Center #300, 300 Conshohocken State Road, West Conshohocken, Pennsylvania, 19428.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity among the parties.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because BTG is subject to the Court's personal jurisdiction with respect to this action.

5. This Court has personal jurisdiction over BTG because this lawsuit concerns a contract between BTG and MIRA (a Texas company) for goods to be sold to MIRA in Texas by BTG, and BTG reached out to MIRA in Texas regarding selling those products to MIRA in Texas. The goods sold by BTG to MIRA were also shipped to and stored by MIRA in Texas.

## FACTUAL ALLEGATIONS

6. MIRA is a Texas company that sells emergency preparedness products, including gas masks, respirators, hazmat suits, and potassium iodide products for preventing illness related to radiation exposure.

7. BTG manufactures and distributes such potassium iodide products under the brand name "Thyrosafe."

8. Years ago, MIRA began purchasing potassium iodide products through a wholesale distributor for BTG. MIRA then sold those products on its website and through the Amazon e-commerce platform.

9. In March 2022, BTG reached out to MIRA in Texas to explore selling potassium iodide products to MIRA directly, as opposed to through a distributor.

10. In 2022, MIRA began buying potassium iodide products directly through BTG for the purpose of reselling those products on MIRA's website and through Amazon.

11. Starting in March 2022, before MIRA began purchasing Thyrosafe products through BTG, and continuing thereafter, MIRA's Chief Executive Officer Roman Zrazhevskiy ("Zrazhevskiy") and Chief Technology Officer Tanya Mironova ("Mironova"), and BTG's Director of Trade Relations Kate Stout ("Stout") discussed that MIRA would be able to sell Thyrosafe products through Amazon.

12. Starting in March 2022 and continuing thereafter, BTG, through Stout, represented to Mironova and Zrazhevskiy that the Thyrosafe products MIRA purchased would be salable on Amazon. BTG, through Stout, its Trade Operations and Logistics Manager Tina Ramirez ("Ramirez"), and its Chief Commercial Officer Thomas Kolaras ("Kolaras"), also represented that BTG would take all the steps necessary to enable MIRA to sell Thyrosafe products on Amazon. Stout, Ramirez, and Kolaras confirmed these representations through several writings.

13. Starting in March 2022, before MIRA began purchasing Thyrosafe products through BTG, and continuing thereafter, BTG, through Stout and Ramirez, further represented in discussions and in several writings that MIRA would be the exclusive vendor for Thyrosafe

products on Amazon. Stout confirmed the exclusivity agreement via a letter in September 2022. BTG subsequently informed Amazon that MIRA had been designated the exclusive seller of Thyrosafe products on the Amazon e-commerce platform.

14. Throughout 2022, BTG, through Stout and Ramirez, further represented that MIRA would be reselling Thyrosafe products in both the United States and in Canada, and BTG coordinated with MIRA to facilitate those sales.

15. MIRA invested over $240,000 in advertising the sale of its Thyrosafe products on Amazon based on BTG's representations that MIRA would be able to sell those products on Amazon and that MIRA would be the exclusive vendor for Thyrosafe products on Amazon.

16. In November 2022, BTG's Vice President of Legal & Compliance Lisa Thompson informed MIRA that Thyrosafe products are not licensed for sale in Canada and cannot be sold there. BTG had not previously informed MIRA that Thyrosafe products could not be sold in Canada—to the contrary, BTG had coordinated with MIRA to facilitate such sales in Canada. Though MIRA immediately stopped selling products to its third-party distributor in Canda, BTG did not recall the products and instead allowed the third-party distributor to continue selling its existing stock of Thyrosafe products in Canada.

17. In approximately March 2023, MIRA began manufacturing its own potassium iodide products. MIRA also continued to sell Thyrosafe-branded products on its website and through Amazon.

18. In June 2023, BTG informed MIRA that it was terminating its relationship with MIRA and that MIRA would no longer be the exclusive vendor for the purpose of selling BTG's potassium iodide products on Amazon.

19. In July 2024, Amazon notified MIRA that it could not sell Thyrosafe products on Amazon unless those products are labeled with a brand transparency label obtained from BTG. Amazon further informed MIRA that those brand transparency labels could only be obtained through BTG and that the reason that such labels were required was because BTG had affirmatively taken steps to require those labels for sales on Amazon.

20. When MIRA contacted BTG to obtain brand transparency labels for the purpose of selling its existing stock of Thyrosafe products through Amazon, BTG refused to provide the labels and informed MIRA that BTG had entered into an exclusivity agreement with a third party.

21. In October 2024, Amazon informed MIRA that BTG had abused Amazon's brand transparency program when it prevented MIRA from selling Thyrosafe products purchased from BTG on Amazon.

22. MIRA now holds approximately 200,000 units of Thyrosafe products purchased from BTG for approximately $1.55 million. MIRA purchased those products because (1) BTG told MIRA that it would be able to sell those products on Amazon as an exclusive vendor of Thyrosafe products; and (2) BTG represented and/or led MIRA to believe that MIRA could sell those products in Canada despite the fact that Thyrosafe products are not licensed for sale in that market. MIRA now brings the following claims.

## <u>CAUSES OF ACTION</u>

### Claim 1: Breach of Contract

23. The preceding paragraphs are incorporated by reference for this cause of action.

24. BTG and MIRA entered into valid contracts wherein BTG sold Thyrosafe-branded potassium iodide products to MIRA for the purpose of MIRA reselling those goods on Amazon.

25. BTG and MIRA also entered into a valid contract wherein MIRA was to be the exclusive distributor of Thyrosafe products on Amazon.

26. MIRA performed or tendered performance of its contractual obligations when it paid for the products BTG delivered. Alternatively, MIRA was excused from performing because BTG failed to perform its contractual obligations and/or committed a prior material breach by delivering products that could not be sold on Amazon because they lacked brand transparency labels.

27. BTG breached the contract by delivering products that could not be sold on Amazon because they lacked brand transparency labels. BTG further breached the contract by selling Thyrosafe products to third-parties for the purpose of those third-parties reselling those goods on

Amazon.

28. BTG has refused to provide brand transparency labels to allow MIRA to sell its existing stock of Thyrosafe products on Amazon.

29. BTG has had a reasonable opportunity to cure the defect and provide the brand transparency labels required for MIRA to sell its stock of Thyrosafe products on Amazon.

30. MIRA is entitled to revoke any acceptance of the Thyrosafe products purchased from BTG because (a) BTG's failure to provide brand transparency labels for those products substantially impairs the value of those products to MIRA; (b) MIRA reasonably assumed that BTG would provide such labels after they were requested by MIRA; (c) BTG did not seasonably cure by providing brand transparency labels for the products purchased by MIRA from BTG; and (d) MIRA's acceptance of the Thyrosafe products was made without knowledge that brand transparency labels were required, and such acceptance was induced by BTG's assurances that MIRA would be able to sell the Thyrosafe products on Amazon. *See* TEX. BUS. & COMM. CODE § 2.608.

31. MIRA has rightfully revoked its acceptance of the Thyrosafe products and has notified BTG of this revocation.

32. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG on Amazon without brand transparency labels that BTG did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

33. MIRA also seeks attorneys' fees and costs, including under Texas Civil Practice and Remedies Code § 38.001, and has presented its claims prior to filing this litigation.

**Claim 2: Breach of Express Warranty**
**(in the alternative)**

34. The preceding paragraphs are incorporated by reference for this cause of action.

35. BTG sold Thyrosafe-branded potassium iodide products to MIRA.

36. BTG represented that the potassium iodide products that MIRA purchased from BTG could be resold through Amazon. BTG further understood that MIRA purchased the products

for the express purpose of selling those products through Amazon

37. BTG represented that MIRA was and would be the exclusive seller of Thyrosafe-branded products on Amazon. BTG further understood that MIRA purchased the products for the express purpose of being the exclusive seller of those products through Amazon.

38. BTG's representations formed and were part of the basis of the bargain between BTG and MIRA regarding MIRA's purchase of Thyrosafe products from BTG, and MIRA relied on BTG's representations that MIRA would be able to sell the products on Amazon when purchasing those products through BTG.

39. The Thyrosafe products provided to MIRA by BTG breached the express warranty by BTG that those products could be sold on Amazon because the products were not accompanied by a brand transparency label.

40. When MIRA purchased the Thyrosafe products from BTG, it lacked knowledge that any brand transparency labels would be required to sell the products on Amazon, and historically, MIRA had been able to sell Thyrosafe products on Amazon without such labels.

41. MIRA notified BTG within a reasonable time that the Thyrosafe products purchased by MIRA from BTG lacked brand transparency labels and could not be resold on Amazon without such labels.

42. BTG has refused to provide brand transparency labels to allow MIRA to sell its existing stock of Thyrosafe products on Amazon.

43. BTG has had a reasonable opportunity to cure the defect and provide the brand transparency labels required for MIRA to sell its stock of Thyrosafe products on Amazon.

44. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG on Amazon without brand transparency labels that BTG did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

45. MIRA also seeks attorneys' fees and costs, including under Texas Civil Practice and Remedies Code § 38.001, and has presented its claims prior to filing this litigation.

**Claim 3: Breach of Implied Warranty of Merchantability**
**(in the alternative)**

46. The preceding paragraphs are incorporated by reference for this cause of action.

47. BTG sold Thyrosafe-branded potassium iodide products to MIRA.

48. The Thyrosafe-branded potassium iodide products that BTG sold to MIRA are unmerchantable because BTG sold those products to MIRA for the express purpose of MIRA reselling those products through Amazon, but the products cannot be sold on Amazon because BTG did not label those products with brand transparency labels.

49. MIRA requested that BTG provide brand-transparency labels to enable MIRA to sell the products on Amazon as agreed and contemplated by the parties, but BTG has refused to provide such labels to MIRA.

50. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG on Amazon without brand transparency labels that BTG did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

51. MIRA also seeks attorneys' fees and costs, including under Texas Civil Practice and Remedies Code § 38.001, and has presented its claims prior to filing this litigation.

**Claim 4: Breach of Implied Warranty for Particular Purpose**
**(in the alternative)**

52. The preceding paragraphs are incorporated by reference for this cause of action.

53. BTG sold Thyrosafe-branded potassium iodide products to MIRA.

54. BTG had knowledge that MIRA was purchasing the Thyrosafe-branded products from BTG for the express purpose of reselling those products on Amazon, and MIRA relied on BTG to provide products that were salable on Amazon. Before MIRA began purchasing Thyrosafe products through BTG, MIRA and BTG discussed, and BTG represented that MIRA would be able to sell those products on Amazon.

55. BTG delivered products to MIRA that were not salable on Amazon because they lacked brand transparency labels.

56. MIRA requested that BTG provide brand-transparency labels to enable MIRA to sell the products on Amazon as agreed and contemplated by the parties, but BTG has refused to provide such labels to MIRA.

57. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG on Amazon without brand transparency labels that BTG did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

58. MIRA also seeks attorneys' fees and costs, including under Texas Civil Practice and Remedies Code § 38.001, and has presented its claims prior to filing this litigation.

**Claim 5: Tortious Interference with Prospective Business Relations**

59. The preceding paragraphs are incorporated by reference for this cause of action.

60. BTG took affirmative steps so that Amazon would require brand transparency labels on any Thyrosafe products sold through Amazon.

61. On information and belief, BTG abused Amazon's brand transparency program to prevent MIRA from selling Thyrosafe products on Amazon or knew that taking affirmative steps to require brand transparency labels would result in interference with MIRA's sales on Amazon. BTG knew that MIRA purchased Thyrosafe products from BTG for the express purpose of selling those products on Amazon.

62. BTG has refused to provide MIRA with brand transparency labels and reneged on MIRA and BTG's exclusivity agreement, thereby preventing MIRA from selling Thyrosafe products on Amazon.

63. BTG's abuse of Amazon's brand transparency program and its refusal to provide the labels was tortious. As described below, BTG committed fraud when it represented that MIRA would be able to sell Thyrosafe products on Amazon and that it would take the steps necessary to enable MIRA to sell the products on Amazon, knowing it had no intention to make this happen.

64. BTG's interference caused MIRA's inability to sell Thyrosafe products on

Amazon. As an established seller of emergency preparedness products on Amazon, there is a reasonable probability that MIRA would have sold Thyrosafe products to Amazon users absent BTG's interference.

65. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG on Amazon without brand transparency labels that BTG did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

**Claim 6: Fraud**

66. The preceding paragraphs are incorporated by reference for this cause of action.

67. At the time that BTG sold Thyrosafe-branded products to MIRA, BTG understood that MIRA was purchasing those products for the express purpose of selling them through Amazon. Before MIRA began purchasing Thyrosafe products through BTG, BTG represented that MIRA would be able to sell those products on Amazon.

68. BTG represented to MIRA that MIRA would be able to sell Thyrosafe-branded products through Amazon. BTG further represented that it would take all necessary actions to enable MIRA to sell Thyrosafe-branded products on Amazon.

69. BTG also represented that MIRA would be the exclusive vendor for Thyrosafe products on Amazon in discussions between March and August 2022 and via a letter in September 2022. BTG subsequently informed Amazon that MIRA had been designated the exclusive seller of Thyrosafe products on the Amazon e-commerce platform.

70. BTG further represented that MIRA would be able to sell Thyrosafe products in Canada.

71. Those representations were false, and at the time they were made, BTG knew the representations were false or made them recklessly without regard for their truthfulness. After MIRA purchased the Thyrosafe-branded products from BTG, BTG informed MIRA that BTG had designated a third-party as its exclusive vendor on Amazon. BTG then refused to provide MIRA

with brand transparency labels to allow MIRA to sell its stock of Thyrosafe-branded products on Amazon.

72. When selling the products to MIRA, BTG omitted and failed to disclose that MIRA would not be able to sell the products on Amazon without brand transparency labels, which BTG has refused to provide. BTG further lacked any intention to provide MIRA with such labels.

73. BTG further omitted and failed to disclose that BTG was taking or had taken steps to require brand transparency labels for any Thyrosafe-branded products sold through Amazon.

74. BTG further omitted and failed to disclose that BTG products were not licensed for sale in Canada, and BTG repeatedly and knowingly facilitated and encouraged MIRA's efforts to sell Thyrosafe-branded products to distributor(s) located in Canada.

75. Those representations and omissions were material, and BTG knew at the time the misrepresentations and omissions were made that the misrepresentations were false and that the omissions were misleading or untrue in light of BTG's partial disclosures and efforts to encourage MIRA to sell Thyrosafe-branded products on Amazon and to distributor(s) in Canada.

76. BTG intended for MIRA to rely on BTG's misrepresentations and omissions.

77. MIRA actually and justifiably relied on BTG's misrepresentations and omissions and suffered injury as a result of that reliance.

78. MIRA further seeks a declaration that the agreement or agreements between MIRA and BTG for purchase of Thyrosafe-branded products by MIRA from BTG are void and invalid because they were induced by BTG's fraud.

79. MIRA further seeks to recover actual and consequential damages resulting from BTG's fraud, including but not limited to storage costs incurred by MIRA for the products and amounts spent advertising sale of the products on Amazon in reliance on BTG's misrepresentations and omissions.

80. In addition, because the harm resulting to MIRA resulted from BTG's fraud, exemplary damages are warranted under Texas Civil Practice and Remedies Code § 41.003(a).

## CONDITIONS PRECEDENT

81. All conditions precedent to MIRA's right of recovery against BTG have been performed, have occurred, or are excused or waived.

## JURY TRIAL

82. MIRA demands a jury trial for all claims that may be tried to a jury.

## PRAYER FOR RELIEF

In light of the foregoing, MIRA respectfully requests:

a. actual damages;

b. a declaration that the agreement(s) between MIRA and BTG for purchase of Thyrosafe-branded products from BTG are void and invalid because they were induced by BTG's fraud;

c. reasonable attorneys' fees and costs;

d. pre- and post-judgment interest; and

e. all other relief available at law or in equity to which MIRA may be justly entitled.

Respectfully submitted,

**CLEVELAND | KRIST PLLC**

*/s/ Tim Cleveland*
Tim Cleveland
State Bar No. 24055318
Austin H. Krist
State Bar No. 24106170
Lourdes Ortiz
State Bar No. 24134904
303 Camp Craft Rd., Suite 325
West Lake Hills, Texas 78746
(737) 900-7107
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com
lortiz@clevelandkrist.com

*Attorneys for MIRA Safety*

**CERTIFICATE OF SERVICE**

I certify that this filing was served on any counsel of record in the above-captioned cause through the electronic filing system or by email on December 6, 2024.

*/s/ Lourdes Ortiz*
Lourdes Ortiz