FILED
March 06, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
DEPUTY

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

MIRA SAFETY, LLC,
a Texas limited liability company,

Plaintiff,

v.

BTG INTERNATIONAL, INC.,
a Delaware corporation, and

SERB, SARL
a Luxembourg société à responsabilité limitée,

Defendants.

Case No.: 1:24-CV-01363-DII

**JURY TRIAL DEMANDED**

---

**MIRA'S SECOND AMENDED COMPLAINT**

Plaintiff MIRA Safety LLC ("MIRA") hereby asserts the following claims against Defendant BTG International, Inc. ("BTG") and SERB, SARL ("SERB").

**SUMMARY OF DISPUTE**

MIRA is a Texas company that sells emergency preparedness products, including gas masks, respirators, hazmat suits, and potassium iodide products for preventing illness related to radiation exposure. Prior to March of 2021, BTG's predecessor in interest was owned by Boston Scientific Corporation, a publicly traded company. On behalf of Boston Scientific Corporation, BTG's predecessor in interest manufactured and distributed, among other products, potassium iodide products under the brand name "Thyrosafe."

On or about March 1, 2021, the assets of BTG's predecessor in interest were acquired by SERB, a Luxembourg-based pharmaceutical manufacturer. In that asset sale, the BTG Specialty Pharmaceuticals business was sold to SERB for $800 million in cash. Boston Scientific Corporation kept the remainder of BTG's assets. Subsequent to this sale, and upon information and belief, BTG became distributor of SERB's Thyrosafe product in the United States.

MIRA has been purchasing Thyrosafe-brand products from BTG's predecessor in interest since as early as 2013. Starting in 2022, however, MIRA desired to increase its purchase of Thyrosafe products for sale through the Amazon.com platform. MIRA purchased over $3.5 million in Thyrosafe-branded products from BTG as a distributor for SERB for the express purpose of reselling those products on Amazon's e-commerce platform and to distributors located in Canada. BTG and SERB encouraged and facilitated those efforts and represented that MIRA would be the exclusive vendor for selling Thyrosafe-branded products on Amazon. The parties' relationship soured, however, when MIRA began manufacturing its own potassium iodide products.

MIRA subsequently learned that it could not sell Thyrosafe-branded products on Amazon unless those products were accompanied by a brand transparency label required by BTG and SERB. BTG and SERB refused to provide such labels and instead informed MIRA that BTG had designated a different third party as its exclusive vendor on Amazon. By refusing to provide the labels, BTG and SERB have effectively blocked MIRA from selling Thorofare-branded products on Amazon—even though BTG and SERB knowingly sold those products to MIRA for that express purpose. To make matters worse, BTG and SERB have also informed MIRA that Thyrosafe-branded products were not authorized for sale in Canada. That came as a surprise to MIRA, because BTG had consistently facilitated and encouraged MIRA to sell to distributors in Canada over the course of the parties' relationship.

MIRA now brings the following claims against BTG and SERB for breach of contract, breaches of express and implied warranties, tortious interference, and fraud.

## PARTIES

1. MIRA is a Texas limited liability company with its principal place of business in Travis County, Texas. MIRA may be contacted through undersigned counsel.

2. BTG is a Delaware corporation with its principal place of business in Pennsylvania but has employees operating in Texas. It may be served at 300 Four Falls Corporate Center #300, 300 Conshohocken State Road, West Conshohocken, Pennsylvania, 19428.

3. SERB is a Luxembourg société à responsabilité limitée with its principal place of business at 8, Rue Beaumont, 1219 Luxembourg.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity among the parties.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because BTG and SERB are subject to the Court's personal jurisdiction with respect to this action.

6. This Court has personal jurisdiction over BTG because this lawsuit concerns a contract between BTG and MIRA (a Texas company) for goods to be sold to MIRA in Texas by BTG, and BTG reached out to MIRA in Texas regarding selling those products to MIRA in Texas. The goods sold by BTG to MIRA were also shipped to and stored by MIRA in Texas.

7. This Court has personal jurisdiction over SERB because SERB, through its actions and communications, entered into a business relationship with MIRA, a Texas company, for the sale of goods intended to be delivered and sold in Texas. SERB purposefully directed its activities toward Texas by facilitating and encouraging sales to distributors located in Texas, thus establishing sufficient contacts with the state for jurisdiction to be proper. Furthermore, the claims in this lawsuit arise directly from SERB's conduct in connection with these transactions.

## FACTUAL ALLEGATIONS

8. MIRA is a Texas company that sells emergency preparedness products, including gas masks, respirators, hazmat suits, and potassium iodide products for preventing illness related to radiation exposure.

9. SERB manufactures and distributes such potassium iodide products under the brand name "Thyrosafe."

10. BTG distributes Thyrosafe in the United States.

11. As early as 2013, MIRA began purchasing potassium iodide products through a wholesale distributor for BTG's predecessor in interest. MIRA then sold those products on its website and through the Amazon e-commerce platform.

12. In March 2022, BTG reached out to MIRA in Texas to explore selling potassium iodide products to MIRA directly, as opposed to through a distributor.

13. In 2022, MIRA began buying potassium iodide products directly through BTG for the purpose of reselling those products on MIRA's website and through Amazon.

14. Starting in March 2022, before MIRA began purchasing Thyrosafe products through BTG, and continuing thereafter, MIRA's Chief Executive Officer Roman Zrazhevskiy ("Zrazhevskiy") and Chief Technology Officer Tanya Mironova ("Mironova"), and BTG's Director of Trade Relations Kate Stout ("Stout") discussed that MIRA would be able to sell Thyrosafe products through Amazon.

15. Starting in March 2022 and continuing thereafter, BTG, through Stout, represented to Mironova and Zrazhevskiy that the Thyrosafe products MIRA purchased would be salable on Amazon. BTG, through Stout, its Trade Operations and Logistics Manager Tina Ramirez ("Ramirez"), and its Chief Commercial Officer Thomas Kolaras ("Kolaras"), also represented that BTG would take all the steps necessary to enable MIRA to sell Thyrosafe products on Amazon. Stout, Ramirez, and Kolaras confirmed these representations through several writings.

16. Starting in March 2022, before MIRA began purchasing Thyrosafe products through BTG and SERB, and continuing thereafter, BTG, through Stout and Ramirez, further represented in discussions and in several writings that MIRA would be the exclusive vendor for Thyrosafe products on Amazon. Stout confirmed the exclusivity agreement via a letter in September 2022. BTG subsequently informed Amazon that MIRA had been designated the exclusive seller of Thyrosafe products on the Amazon e-commerce platform.

17. MIRA's purchase of Thyrosafe products was overseen by SERB as the manufacturer of Thyrosafe, and SERB dictated the purchase quantities, terms, and forecasting schedule.

18. Specifically, SERB oversaw, and was involved in discussions over, MIRA's exclusive sale of Thyrosafe in the United States, MIRA's desire to sell Thyrosafe in Canada, pricing for Thyrosafe products, and the terms of the parties' relationship.

19. BTG regularly reported to, and received direction from, SERB, and SERB set

MIRA's minimum order quantities and order schedule.

20. Throughout 2022, BTG, through Stout and Ramirez, further represented that MIRA would be reselling Thyrosafe products in both the United States and in Canada, and both BTG and SERB coordinated with MIRA to facilitate those sales.

21. MIRA invested over $240,000 in advertising the sale of its Thyrosafe products on Amazon based on BTG's representations that MIRA would be able to sell those products on Amazon and that MIRA would be the exclusive vendor for Thyrosafe products on Amazon.

22. In November 2022, BTG's Vice President of Legal & Compliance Lisa Thompson informed MIRA that Thyrosafe products are not licensed for sale in Canada and cannot be sold there.

23. BTG had not previously informed MIRA that Thyrosafe products could not be sold in Canada—to the contrary, BTG had coordinated with MIRA to facilitate such sales in Canada.

24. Though MIRA immediately stopped selling products to its third-party distributor in Canada, BTG did not recall the products and instead allowed the third-party distributor to continue selling its existing stock of Thyrosafe products in Canada.

25. In approximately March 2023, MIRA began manufacturing its own potassium iodide products. MIRA also continued to sell Thyrosafe-branded products on its website and through Amazon.

26. In June 2023, BTG informed MIRA that it was terminating its relationship with MIRA and that MIRA would no longer be the exclusive vendor for the purpose of selling BTG's potassium iodide products on Amazon.

27. In July 2024, Amazon notified MIRA that it could not sell Thyrosafe products on Amazon unless those products are labeled with a brand transparency label obtained from BTG. Amazon further informed MIRA that those brand transparency labels could only be obtained through BTG and that the reason that such labels were required was because BTG had affirmatively taken steps to require those labels for sales on Amazon.

28. When MIRA contacted BTG to obtain brand transparency labels for the purpose of selling its existing stock of Thyrosafe products through Amazon, BTG refused to provide the labels

and informed MIRA that BTG had entered into an exclusivity agreement with a third party.

29. In October 2024, Amazon informed MIRA that BTG had abused Amazon's brand transparency program when it prevented MIRA from selling Thyrosafe products purchased from BTG on Amazon.

30. MIRA now holds approximately 200,000 units of Thyrosafe products purchased from BTG and SERB for approximately $1.55 million. MIRA purchased those products because (1) BTG told MIRA that it would be able to sell those products on Amazon as an exclusive vendor of Thyrosafe products; and (2) BTG represented and/or led MIRA to believe that MIRA could sell those products in Canada despite the fact that Thyrosafe products are not licensed for sale in that market. MIRA now brings the following claims.

## CAUSES OF ACTION

### Claim 1: Breach of Contract

31. The preceding paragraphs are incorporated by reference for this cause of action.

32. BTG and MIRA entered into valid contracts wherein BTG sold Thyrosafe-branded potassium iodide products to MIRA for the purpose of MIRA reselling those goods on Amazon.

33. BTG and MIRA also entered into a valid contract wherein MIRA was to be the exclusive distributor of Thyrosafe products on Amazon.

34. MIRA performed or tendered performance of its contractual obligations when it paid for the products BTG delivered. Alternatively, MIRA was excused from performing because BTG failed to perform its contractual obligations and/or committed a prior material breach by delivering products that could not be sold on Amazon because they lacked brand transparency labels.

35. BTG breached the contract by delivering products that could not be sold on Amazon because they lacked brand transparency labels. BTG further breached the contract by selling Thyrosafe products to third-parties for the purpose of those third-parties reselling those goods on

Amazon.

36. BTG has refused to provide brand transparency labels to allow MIRA to sell its existing stock of Thyrosafe products on Amazon.

37. BTG has had a reasonable opportunity to cure the defect and provide the brand transparency labels required for MIRA to sell its stock of Thyrosafe products on Amazon.

38. MIRA is entitled to revoke any acceptance of the Thyrosafe products purchased from BTG because (a) BTG's failure to provide brand transparency labels for those products substantially impairs the value of those products to MIRA; (b) MIRA reasonably assumed that BTG would provide such labels after they were requested by MIRA; (c) BTG did not seasonably cure by providing brand transparency labels for the products purchased by MIRA from BTG; and (d) MIRA's acceptance of the Thyrosafe products was made without knowledge that brand transparency labels were required, and such acceptance was induced by BTG's assurances that MIRA would be able to sell the Thyrosafe products on Amazon. *See* TEX. BUS. & COMM. CODE § 2.608.

39. MIRA has rightfully revoked its acceptance of the Thyrosafe products and has notified BTG of this revocation.

40. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG on Amazon without brand transparency labels that BTG did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

41. MIRA also seeks attorneys' fees and costs, including under Texas Civil Practice and Remedies Code § 38.001, and has presented its claims prior to filing this litigation.

**Claim 2: Breach of Express Warranty**
**(in the alternative)**

42. The preceding paragraphs are incorporated by reference for this cause of action.

43. BTG sold Thyrosafe-branded potassium iodide products to MIRA.

44. BTG represented that the potassium iodide products that MIRA purchased from BTG could be resold through Amazon. BTG further understood that MIRA purchased the products

for the express purpose of selling those products through Amazon

45. BTG represented that MIRA was and would be the exclusive seller of Thyrosafe-branded products on Amazon. BTG further understood that MIRA purchased the products for the express purpose of being the exclusive seller of those products through Amazon.

46. BTG's representations formed and were part of the basis of the bargain between BTG and MIRA regarding MIRA's purchase of Thyrosafe products from BTG, and MIRA relied on BTG's representations that MIRA would be able to sell the products on Amazon when purchasing those products through BTG.

47. The Thyrosafe products provided to MIRA by BTG breached the express warranty by BTG that those products could be sold on Amazon because the products were not accompanied by a brand transparency label.

48. When MIRA purchased the Thyrosafe products from BTG, it lacked knowledge that any brand transparency labels would be required to sell the products on Amazon, and historically, MIRA had been able to sell Thyrosafe products on Amazon without such labels.

49. MIRA notified BTG within a reasonable time that the Thyrosafe products purchased by MIRA from BTG lacked brand transparency labels and could not be resold on Amazon without such labels.

50. BTG has refused to provide brand transparency labels to allow MIRA to sell its existing stock of Thyrosafe products on Amazon.

51. BTG has had a reasonable opportunity to cure the defect and provide the brand transparency labels required for MIRA to sell its stock of Thyrosafe products on Amazon.

52. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG on Amazon without brand transparency labels that BTG did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

53. MIRA also seeks attorneys' fees and costs, including under Texas Civil Practice and Remedies Code § 38.001, and has presented its claims prior to filing this litigation.

**Claim 3: Breach of Implied Warranty of Merchantability**
**(in the alternative)**

54. The preceding paragraphs are incorporated by reference for this cause of action.

55. BTG sold Thyrosafe-branded potassium iodide products to MIRA.

56. The Thyrosafe-branded potassium iodide products that BTG sold to MIRA are unmerchantable because BTG sold those products to MIRA for the express purpose of MIRA reselling those products through Amazon, but the products cannot be sold on Amazon because BTG did not label those products with brand transparency labels.

57. MIRA requested that BTG provide brand-transparency labels to enable MIRA to sell the products on Amazon as agreed and contemplated by the parties, but BTG has refused to provide such labels to MIRA.

58. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG on Amazon without brand transparency labels that BTG did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

59. MIRA also seeks attorneys' fees and costs, including under Texas Civil Practice and Remedies Code § 38.001, and has presented its claims prior to filing this litigation.

**Claim 4: Breach of Implied Warranty for Particular Purpose**
**(in the alternative)**

60. The preceding paragraphs are incorporated by reference for this cause of action.

61. BTG sold Thyrosafe-branded potassium iodide products to MIRA.

62. BTG had knowledge that MIRA was purchasing the Thyrosafe-branded products from BTG for the express purpose of reselling those products on Amazon, and MIRA relied on BTG to provide products that were salable on Amazon. Before MIRA began purchasing Thyrosafe products through BTG, MIRA and BTG discussed, and BTG represented that MIRA would be able to sell those products on Amazon.

63. BTG delivered products to MIRA that were not salable on Amazon because they lacked brand transparency labels.

64. MIRA requested that BTG provide brand-transparency labels to enable MIRA to sell the products on Amazon as agreed and contemplated by the parties, but BTG has refused to provide such labels to MIRA.

65. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG on Amazon without brand transparency labels that BTG did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

66. MIRA also seeks attorneys' fees and costs, including under Texas Civil Practice and Remedies Code § 38.001, and has presented its claims prior to filing this litigation.

**Claim 5: Tortious Interference with Prospective Business Relations**

67. The preceding paragraphs are incorporated by reference for this cause of action.

68. BTG and SERB took affirmative steps so that Amazon would require brand transparency labels on any Thyrosafe products sold through Amazon.

69. BTG could not have obtained brand transparency labels on Amazon without the direction and cooperation of SERB.

70. On information and belief, BTG and SERB abused Amazon's brand transparency program to prevent MIRA from selling Thyrosafe products on Amazon or knew that taking affirmative steps to require brand transparency labels would result in interference with MIRA's sales on Amazon. BTG and SERB knew that MIRA purchased Thyrosafe products from BTG for the express purpose of selling those products on Amazon.

71. BTG and SERB have refused to provide MIRA with brand transparency labels and reneged on MIRA and BTG's exclusivity agreement, thereby preventing MIRA from selling Thyrosafe products on Amazon.

72. BTG and SERB’s abuse of Amazon's brand transparency program and their refusal to provide the labels was tortious. As described below, BTG and SERB committed fraud when they represented that MIRA would be able to sell Thyrosafe products on Amazon and that they would take the steps necessary to enable MIRA to sell the products on Amazon, knowing they had no

intention to make this happen.

73. BTG and SERB's interference caused MIRA's inability to sell Thyrosafe products on Amazon. As an established seller of emergency preparedness products on Amazon, there is a reasonable probability that MIRA would have sold Thyrosafe products to Amazon users absent BTG's interference.

74. MIRA has suffered injury and actual damages because it could not sell the Thyrosafe products purchased from BTG and SERB on Amazon without brand transparency labels that BTG or SERB did not include with the products and has refused to provide. MIRA has also incurred consequential damages in the form of storage costs for the Thyrosafe-branded products that it now holds.

**Claim 6: Fraud**

75. The preceding paragraphs are incorporated by reference for this cause of action.

76. At the time that BTG and SERB sold Thyrosafe-branded products to MIRA, BTG and SERB understood that MIRA was purchasing those products for the express purpose of selling them through Amazon. Before MIRA began purchasing Thyrosafe products through BTG and SERB, BTG and SERB represented that MIRA would be able to sell those products on Amazon.

77. BTG and SERB represented to MIRA that MIRA would be able to sell Thyrosafe-branded products through Amazon. BTG and SERB further represented that they would take all necessary actions to enable MIRA to sell Thyrosafe-branded products on Amazon.

78. BTG also represented that MIRA would be the exclusive vendor for Thyrosafe products on Amazon in discussions between March and August 2022 and via a letter in September 2022. BTG subsequently informed Amazon that MIRA had been designated the exclusive seller of Thyrosafe products on the Amazon e-commerce platform.

79. BTG and SERB further represented that MIRA would be able to sell Thyrosafe products in Canada.

80. Those representations were false, and at the time they were made, BTG and SERB knew the representations were false or made them recklessly without regard for their truthfulness. After MIRA purchased the Thyrosafe-branded products from BTG and SERB, BTG and SERB

informed MIRA that BTG had designated a third-party as its exclusive vendor on Amazon. BTG and SERB then refused to provide MIRA with brand transparency labels to allow MIRA to sell its stock of Thyrosafe-branded products on Amazon.

81. When selling the products to MIRA, BTG and SERB omitted and failed to disclose that MIRA would not be able to sell the products on Amazon without brand transparency labels, which BTG and SERB have refused to provide. BTG and SERB further lacked any intention to provide MIRA with such labels.

82. BTG and SERB further omitted and failed to disclose that BTG and SERB were taking or had taken steps to require brand transparency labels for any Thyrosafe-branded products sold through Amazon.

83. BTG and SERB further omitted and failed to disclose that SERB's products were not licensed for sale in Canada, and BTG and SERB repeatedly and knowingly facilitated and encouraged MIRA's efforts to sell Thyrosafe-branded products to distributor(s) located in Canada.

84. Those representations and omissions were material, and BTG and SERB knew at the time the misrepresentations and omissions were made that the misrepresentations were false and that the omissions were misleading or untrue in light of BTG and SERB's partial disclosures and efforts to encourage MIRA to sell Thyrosafe-branded products on Amazon and to distributor(s) in Canada.

85. BTG and SERB intended for MIRA to rely on BTG's misrepresentations and omissions.

86. MIRA actually and justifiably relied on BTG and SERB's misrepresentations and omissions and suffered injury as a result of that reliance.

87. MIRA further seeks a declaration that the agreement or agreements between MIRA and BTG for purchase of Thyrosafe-branded products by MIRA from BTG and SERB are void and invalid because they were induced by BTG's fraud.

88. MIRA further seeks to recover actual and consequential damages resulting from BTG's fraud, including but not limited to storage costs incurred by MIRA for the products and amounts spent advertising sale of the products on Amazon in reliance on BTG's misrepresentations and omissions.

89. In addition, because the harm resulting to MIRA resulted from BTG's fraud, exemplary damages are warranted under Texas Civil Practice and Remedies Code § 41.003(a).

**Claim 7: Promissory Estoppel**

90. The preceding paragraphs are incorporated by reference for this cause of action.

91. BTG and SERB promised MIRA that MIRA would be the exclusive vendor for Thyrosafe products on Amazon in the United States.

92. BTG and SERB confirmed this exclusivity agreement via a letter in September 2022.

93. In reliance upon this promise by BTG and SERB, MIRA invested over $240,000 in advertising the availability of Thyrosafe products through Amazon.com.

94. Also in reliance upon this promise by BTG and SERB, Mira purchased over 200,000 units of Thyrosafe products from BTG and SERB for approximately $1.55 million.

95. It was foreseeable by BTG and SERB that their promise of exclusivity on the Amazon platform would result in MIRA's reliance upon that promise.

96. And, in fact, MIRA communicated that it was relying upon that promise in purchasing inventory from BTG and SERB and advertising to promote the sale of Thyrosafe.

97. MIRA's reliance was substantial and was undertaken to its detriment.

98. Therefore, BTG and SERB may be held liable for promissory estoppel.

**Claim 8: Unjust Enrichment**

99. The preceding paragraphs are incorporated by reference for this cause of action.

100. BTG and SERB promised MIRA that MIRA would be the exclusive vendor for Thyrosafe products on Amazon in the United States.

101. BTG and SERB confirmed this exclusivity agreement via a letter in September 2022.

102. In reliance upon this promise by BTG and SERB, MIRA invested over $240,000 in advertising the availability of Thyrosafe products through Amazon.com.

103. Also in reliance upon this promise by BTG and SERB, Mira purchased over 200,000 units of Thyrosafe products from BTG and SERB for approximately $1.55 million.

104. BTG and SERB's promises were false and were intended to mislead MIRA into purchasing inventory of Thyrosafe from BTG and SERB and into promoting Thyrosafe without the ability to sell it on Amazon.

105. In making such a representation to MIRA, BTG and SERB's actions constituted fraud, duress, or undue advantage.

106. BTG and SERB, therefore, obtained a benefit from these representations, namely, the receipt of substantial sums of money for inventory that cannot be sold and substantial advertising for which they have not paid.

107. BTG and SERB may, therefore, be held liable for unjust enrichment.

**Claim 9: Civil Conspiracy**

108. The preceding paragraphs are incorporated by reference for this cause of action.

109. BTG and SERB, acting in concert and with a meeting of the minds, agreed to commit unlawful acts, including fraud and unjust enrichment, to the deteriment of MIRA.

110. Specifically, BTG and SERB agreed and coordinated to falsely promise MIRA exclusive rights to sell Thyrosafe products on Amazon in the United States, induce MIRA to purchase substantial inventory and invest in advertising, and then deny MIRA the ability to sell the products as promised.

111. BTG and SERB's coordinated actions were committed with the intent to harm MIRA and resulted in substantial financial loss and damage to MIRA.

112. As a direct and proximate result of the civil conspiracy between BTG and SERB, MIRA has suffered damages for which BTG and SERB are jointly and severally liable under Texas law.

**Claim 10: Unfair Competition (Texas Law)**

113. The preceding paragraphs are incorporated by reference for this cause of action.

114. BTG and SERB, acting individually and in concert, have engaged in conduct that constitutes unfair competition under Texas law, including the misappropriation of MIRA's time, labor, skill, and resources, as well as engaging in fraudulent and deceptive practices to gain a competitive advantage.

115. Specifically, BTG and SERB induced MIRA to invest substantial sums in inventory and advertising by promising exclusive rights to sell Thyrosafe products on Amazon in the United States, and subsequently denied MIRA those rights, thereby wrongfully appropriating the benefits of MIRA's efforts and expenditures for their own gain.

116. BTG and SERB's actions were willful and intentional and were undertaken with the purpose of harming MIRA's business and diverting economic benefits to themselves, resulting in actual damages to MIRA.

117. As a direct and proximate result of BTG and SERB's unfair competition, MIRA has suffered substantial harm and is entitled to recover all remedies available under Texas law.

**CONDITIONS PRECEDENT**

1. All conditions precedent to MIRA's right of recovery against BTG or SERB have been performed, have occurred, or are excused or waived.

**JURY TRIAL**

2. MIRA demands a jury trial for all claims that may be tried to a jury.

**PRAYER FOR RELIEF**

In light of the foregoing, MIRA respectfully requests:

a. actual damages;

b. a declaration that the agreement(s) between MIRA and BTG for purchase of Thyrosafe-branded products from BTG are void and invalid because they were induced by BTG's fraud;

c. reasonable attorneys' fees and costs;

d. pre- and post-judgment interest; and

e. all other relief available at law or in equity to which MIRA may be justly entitled.

Respectfully submitted,

**REVISION LEGAL, PLLC**

*/s/ John Di Giacomo*
John Di Giacomo
Revision Legal, PLLC
444 Cass St., Suite D
Traverse City, MI 49684
(231) 714-0100
john@revisionlegal.com

*Attorneys for MIRA Safety*

**CERTIFICATE OF SERVICE**

I certify that this filing was served on any counsel of record in the above-captioned cause through the electronic filing system or by email on February 18, 2026.

*/s/ John Di Giacomo*

John Di Giacomo